## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **JERRY STEVENS, DEBORAH STEVENS, AND DAVID GEOFFRION,** | § § § | |
| **Plaintiffs,** | § § | |
| **V.** | § § | A-11-CA-550 LY |
| **JOSEPH HAYES, VICTOR MORALES, JOHN F. SMITH, UNKNOWN FOREST SERVICE OFFICERS, TOM TIDWELL, ABIGAIL KIMBELL, UNITED STATES FOREST SERVICE, TOM VILSACK, UNITED STATES DEPARTMENT OF AGRICULTURE, WILLIAM RICHARDSON, STATE OF NEW MEXICO, BARACK OBAMA, UNITED STATES OF AMERICA,** | § § § § § § § § § § § | |
| **Defendants.** | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:    THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court are six motions to dismiss filed by the Defendants in the above-styled case.

The motions before the Court, along with the responsive pleadings, are:

• **Motion to Dismiss by State of New Mexico and William Richardson, filed December 1, 2011 (Clerk's Dkt. #14)**; Plaintiffs' Response to Motion to Dismiss by State of New Mexico and William Richardson, filed December 15, 2011 (Clerk's Dkt. #33); Reply in Support of Motion to Dismiss by Defendants State of New Mexico and William Richardson, filed December 27, 2011 (Clerk's Dkt. #39);

• **Corrected Motion to Dismiss Plaintiff Geoffrion's Action Against the United States by the United States of America, filed December 19, 2011 (Clerk's Dkt. #36)**; Plaintiff Geoffrion's Response to Motion to Dismiss by USOA, filed January 3, 2012 (Clerk's Dkt. #41); Defendant United States' Reply in Support of Motion to Dismiss Plaintiff Geoffrion's Action Against the United States, filed January 17, 2012 (Clerk's Dkt. #46);

- **Motion to Dismiss Plaintiffs Jerry and Deborah Stevens' Action Against the United States of America, filed December 19, 2011 (Clerk's Dkt. #38)**; The Stevens' Response to Motion to Dismiss by the United States of America, filed January 3, 2012 (Clerk's Dkt. #43); Defendant United States' Reply in Support of Motion to Dismiss Stevens' Action Against the United States, filed January 17, 2012 (Clerk's Dkt. #47);

- **Federal Defendants' Motion to Dismiss, filed December 19, 2011 (Clerk's Dkt. #37)**; Plaintiffs' Response to Federal Defendants' Motion to Dismiss, filed January 3, 2012 (Clerk's Dkt. #42); Federal Defendants' Reply in Support of Motion to Dismiss, filed January 17, 2012 (Clerk's Dkt. #45);

- **Defendant Hayes' Motion to Dismiss, filed January 6, 2012 (Clerk's Dkt. #44)**; Plaintiffs' Response to Motion to Dismiss by Hayes, filed January 20, 2012 (Clerk's Dkt. #49); Deborah Stevens' Declaration in Support of Plaintiffs' Response to Motion to Dismiss by Hayes, filed January 20, 2012 (Clerk's Dkt. #50); Defendant Hayes' Reply in Support of His Motion to Dismiss, February 3, 2012 (Clerk's Dkt. #53);

- **Defendant Morales' Motion to Dismiss, filed January 3, 2012 (Clerk's Dkt. #40)**; Plaintiffs' Response to Motion to Dismiss by Morales, filed January 17, 2012 (Clerk's Dkt. #48); and Defendant Morales' Reply in Support of his Motion to Dismiss, filed February 1, 2012 (Clerk's Dkt. #52).

The District Court referred the above motions to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. After reviewing the parties' briefs, relevant case law, as well as the entire case file, the undersigned issues the following Report and Recommendation to the District Court.

## I. BACKGROUND

On June 30, 2009, Plaintiffs Jerry Stevens, Deborah Stevens, and David Geoffrion (collectively "Plaintiffs") were traveling to the annual Rainbow Gathering in the Santa Fe National Forest, located in the state of New Mexico. (Clerk's Dkt. #5 at 10). Plaintiffs allege a number of Forest Service Law Enforcement Officers ("USFS Agents") detained them for a purported traffic

violation and then conducted a search after a drug-sniffing dog alerted to their vehicle. (*Id.* at 10-22). These officers include Joseph Hayes ("Hayes"), Victor Morales ("Morales"), and other unnamed officers.

On January 4, 2010, Deborah Stevens presented an administrative claim to the United States Forest Service ("USFS") in relation to the June 30, 2009, traffic stop.  (Clerk's Dkt. #36, Ex. 2, Attach. A). On June 30, 2011, Plaintiffs filed suit against the thirteen named defendants and an unspecified number of unknown USFS Agents. (Clerk's Dkt. #1.) On July 5, 2011, Geoffrion presented an administrative claim to the USFS in relation to the June 30, 2009, traffic stop. (Clerk's Dkt. #36, Ex. 2, Attach. E).  On October 17, 2011, Plaintiffs filed an Amended Complaint. (Clerk's Dkt. #5).  In the Amended Complaint, Plaintiffs bring claims under (1) 42 U.S.C. §§ 1983 and 1985; (2) *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999 (1971); and (3) the Federal Tort Claims Act ("FTCA").[1] (*Id.* at 23, 27, and 75).

---

[1]The State of New Mexico and Governor William Richardson move to dismiss under the impression that Plaintiffs bring claims against them under the New Mexico Tort Claims Act, N.M. STAT. ANN. § 41-4, et. seq.  ("NMTCA"); however, no such claim is made in Plaintiffs' Amended Complaint.  Only two references are made to the NMTCA in the amended complaint, and both refer to the NMTCA only insofar as it is related to the FTCA or § 1983 claims.

Specifically, under the heading "FTCA," Plaintiffs' amended complaint states, "if USOA . . . were a private party, USOA would be liable to Plaintiffs under the applicable laws of the Territory. *See* N.M. STAT. ANN. § 41-4-12." (Clerk's Dkt. #5 at 27-28). Nothing in this reference to the NMTCA indicates that Plaintiffs seek to sue the State of New Mexico or Governor Richardson under the NMTCA.  Next, under the heading "Waiver of Immunity," Plaintiffs' Amended Complaint states, "The Territory waives immunity for claims of this nature. N.M. STAT. ANN. § 41-4-4 (1978)." (Amend. Compl. at 10).  In the same section, Plaintiffs state they "assert claims under the Federal Tort Claims Act, *Bivens*, the local laws of the Territory, and the theory of deliberate indifference from *Brown*."  The phrase, "local laws of the Territory," is insufficient to indicate Plaintiffs make a claim under the NMTCA.  Indeed, Governor Richardson is only mentioned in one page of the Amended Complaint under the heading "Deliberate Indifference" referring to Plaintiffs' § 1983 "failure to train" claims. (Clerk's Dkt. #5 at 99).  Furthermore, in response to the State of New Mexico and Governor Richardson's Motion to Dismiss argument regarding the NMTCA's

In their §§ 1983, 1985 and *Bivens* claims, Plaintiffs bring unreasonable search and seizure

allegations against the USFS agents as well as "failure to train" claims against "all those holding

relevant administrative positions above them."[2,3,4] (Clerk's Dkt. #5 at 23, 75-98, 99-100). Regarding

the "failure to train" claims, Plaintiffs list the following Defendants as liable based on their failure

to train the USFS agents: the United States Forest Service ("USFS") and Chiefs Tom  Tidwell

("Chief Tidwell") and Abigail Kimbell ("Chief Kimbell"); the United States Department of

Agriculture ("USDA") and Secretary Tom Vilsack ("Secretary Vilsack"); the State of New Mexico

("New Mexico") and Governor William Richardson ("Governor Richardson"); the United States of

---

requirement to submit a tort claim letter, Plaintiffs refer to the FTCA and state "[t]here are no tort claim letters to NEW MEXICO.  None is needed." (Clerk's Dkt. #33 at 8-9).  Thus, the references to the NMTCA in Plaintiffs' Amended Complaint do not indicate that Plaintiffs seek to bring a claim against the State of New Mexico or Governor Richardson under the NMTCA, and the Court need not address the State of New Mexico and Governor Richardson's arguments regarding the NMTCA.

[2]Plaintiffs state, "Respondeat superior is the nature of the FTCA claims. Everything else is individual liability." (Clerk's Dkt. #42 at 5). The undersigned thus treats all the 42 U.S.C. §§ 1983 and 1985 and *Bivens* claims as claims based upon individual rather than supervisory theories of liability.

[3]Plaintiffs conflate "deliberate indifference" with "failure to train." Under the heading, "deliberate indifference," Plaintiffs state that Defendants are liable "for the damages caused by that *failure to train* these Forest Service officers." [emphasis added] (Clerk's Dkt. #5 at 99-100). As "deliberate indifference" is not a claim but a standard of fault that applies in certain causes of action, including "failure to train" claims under § 1983 and *Bivens*, the undersigned treats Plaintiffs claims of "deliberate indifference" as "failure to train" claims under § 1983 and *Bivens*.

[4]Plaintiffs attempt to portray the USFS Agents and their federal superiors as "state" actors under § 1983; however, this is unnecessary as Plaintiffs also bring suit against the federal officials in their individual capacities pursuant to *Bivens*.  *See Stephenson v. Reno*, 28 F.3d 26, 26 n. 1 (5th Cir. 1994) (civil rights violations by federal defendants are construed as brought pursuant to *Bivens*). Accordingly, the undersigned will treat Plaintiffs' civil rights violation claims against the State of New Mexico and Governor Richardson as § 1983 claims and Plaintiffs' civil rights violation  claims against the federal defendants as *Bivens* claims.

4

America ("United States") and President Barack Obama ("President Obama"); and John F. Smith ("Smith").[5, 6] (Clerk's Dkt. #5 at 99-101).

Regarding their FTCA claim, Plaintiffs bring suit against the United States of America. (Clerk's Dkt. #5 at 27). They list numerous claims based on 18 U.S.C. §§ 241 and 242 under the headings, "Torts arising from criminal conduct—State" and "Torts arising from criminal conduct—Federal." (*Id.* at 28 and 48). Under "Torts arising from criminal conduct—State," Plaintiffs claims include assault, aggravated assault, battery, false imprisonment, public nuisance, interference with communications, disturbing lawful assembly, breaking and entering, unlawful taking of a vehicle, injuring or tampering with a motor vehicle, and criminal damage to property. (*Id.* at 28-47). Under "Torts arising from criminal conduct—Federal," Plaintiffs claims include criminal violation of transportation privileges and criminal violation of the right to be free from unreasonable search and seizure. (*Id.* at 48-73).

Plaintiffs seek actual and punitive damages as well as injunctive relief. As injunctive relief, Plaintiffs request the Court order the USDA and/or the USFS publish a map of the roadways designated for motor vehicle use on the Forest Service website. (*Id.* at 101-102). Notably, Plaintiffs specify that, in the event the dollar does not "survive the duration of this suit," they demand payment of damages in gold. (*Id.* at 9).

---

[5]Although Smith is a named defendant, he is no where mentioned in the Amended Complaint beyond the case dial. However, Federal Defendants' Motion to Dismiss reveals that Smith was the USFS Regional Patrol Commander and presumes that he is included Plaintiffs' "failure to train" claims. (Clerk's Dkt. #37 at 5-6). As such, the undersigned will include Smith in the Plaintiffs' "failure to train" claims.

[6]Plaintiffs state that they bring suit against the named Federal Officials in their individual and not official capacities. (Clerk's Dkt. #42 at 1-2). Accordingly, the undersigned will not consider any arguments relating to *Bivens* claims against the Federal Officials in their official capacities.

## II.  STANDARD OF REVIEW

### A.    Lack of Subject-Matter Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may assert lack of subject-matter jurisdiction as a defense to a claim for relief in federal court.  "A case is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."  *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)).  The court must address a Rule 12(b)(1) jurisdictional challenge before addressing a challenge on the merits to prevent "a court without jurisdiction from prematurely dismissing a case with prejudice."  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

The "plaintiff bears the burden of proof that jurisdiction does in fact exist."  *Arena v. Graybar Elec. Co., Inc.*, 669 F.3d 214, 223 (5th Cir. 2012) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).  In determining whether subject-matter jurisdiction exists, the court must:

> take the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff. . . . [U]nder Rule 12(b)(1), the court may find a plausible set of facts by considering any of the following: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.

*Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (citations and internal punctuation omitted).

### B.    Lack of Personal Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may assert lack of personal jurisdiction as a defense to a claim for relief in federal court. As with subject-matter jurisdiction,

Rule 12(b)(2) personal jurisdiction challenges must be dealt with before addressing a challenge on the merits to prevent a court without jurisdiction from prematurely dismissing a case with prejudice. *See Guidry v. U.S. Tobacco Co., Inc.* 188 F.3d 619, 623 n. 2 (5th Cir. 1999) ("A court must find jurisdiction, both subject matter and personal, before determining the validity of a claim").

A court must consider both constitutional issues as well as the applicable statutes in resolving the issue of personal jurisdiction. In this case, the Court must consider whether: (1) the Texas long-arm statute creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution. *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002). The Texas long-arm statute, which authorizes the exercise of jurisdiction over a nonresident defendant who does business in Texas, extends to the limits of due process. *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 716 (5th Cir. 1999); *see also CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996) (Texas Supreme Court has repeatedly interpreted long-arm statute "to reach as far as the federal constitutional requirements of due process will allow"). Accordingly, only the due process prong of the inquiry must be addressed. *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 854 (5th Cir. 2000).

Due process for jurisdictional purposes requires that the defendant must have sufficient "minimum contacts" with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). A defendant establishes minimum contacts with a state if "the defendant's conduct and connection with the forum state are such that [they] should reasonably anticipate being haled into court there." *Burger King*, 471 U.S. at 474 (quoting *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980)). There must be some act whereby the defendant "purposely avails itself

of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.* at 475.

These "minimum contacts" may be analyzed in terms of general jurisdiction or specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 381 (5th Cir. 2003). General jurisdiction is proper when the defendant has other "continuous and systematic" contacts with the forum unrelated to the pending litigation. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). Specific jurisdiction exists when the contacts with the forum state arise from, or are directly related to, the cause of action. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (jurisdiction appropriate where activities "purposefully directed" at residents of forum state and litigation arises out of or relates to those activities).

The plaintiff bears the burden of alleging facts sufficient to establish personal jurisdiction over a nonresident defendant. *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999); *see also Felch v. Transportes Lar-Mex SA de CV*, 92 F.3d 320, 326 (5th Cir. 1996) (where allegations are in dispute, party seeking to invoke jurisdiction bears burden of establishing sufficient contacts by nonresident defendant). The court must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits submitted. *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).

## C.     Venue

Under Federal Rule of Civil Procedure 12(b)(3), a defendant may assert improper venue as a defense to a claim for relief in federal court. Generally, venue is determined by 28 U.S.C. §1391(b), which provides:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may . . . be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. §1391(b). "[T]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

**D.     Insufficient Service of Process**

Under Federal Rule of Civil Procedure 12(b)(5), a defendant may assert insufficient service of process as a defense to a claim for relief in federal court. The Federal Rules of Civil Procedure govern the service requirements regarding the summons and the complaint:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m). Rule 4(m) permits a district court to dismiss a case without prejudice if a plaintiff fails to comply with its mandates. *Millan v. USAA Gen. Indem. Co.*, 546 F.3d 321, 325 (5th Cir. 2008).

**E.     Failure to State a Claim**

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may assert failure to state a claim upon which relief can be granted as a defense to a claim for relief in federal court. When evaluating a motion to dismiss under Rule 12(b)(6) the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant Cnty.*

9

*Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  Although FED. R. CIV. P. 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-57 (2007).  Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Id.* at  570.

The Supreme Court has recently made clear this plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The standard is properly guided by "[t]wo working principles." *Id*.  First, although "a court must accept as true all of the allegations contained in a complaint," that "tenet" "is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 1949-50.   Second, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 1950.  Thus, in considering a motion to dismiss the court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and  determine whether those allegations plausibly give rise to an entitlement to relief.  If not, "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id*. (quoting FED. R. CIV. P. 8(a)(2)).

### III.  ANALYSIS

**A.      FTCA Claims Against the United States**

Plaintiffs seek to pursue claims against the United States pursuant to the FTCA. (Clerk's Dkt. #5 at 27). The United States seeks to dismiss Plaintiffs' FTCA claims on a number of grounds: (1) lack of subject-matter jurisdiction because the United States enjoys sovereign immunity from constitutional torts; (2) insufficient service of process; and (3) Plaintiff Geoffrion's failure to state a claim.

**1.      Lack of Subject-Matter Jurisdiction**

The United States moves for dismissal for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (Clerk's Dkt. #36 at 9 and #38 at 5). Specifically, the United States argues that the Court lacks subject-matter jurisdiction regarding Plaintiffs' FTCA claims because the United States enjoys sovereign immunity from constitutional torts, which Plaintiffs appear to pursue.[7]

Although Plaintiffs list several criminal offenses in the FTCA section of their Amended Complaint, such offenses are not causes of action under the FTCA.  For example, courts have held that a claim under 18 U.S.C. §§ 241 and 242, is not actionable under the FTCA.  *See, e.g., Abou-Hussein v. Gates*, 657 F.Supp.2d 77, 81 (D.D.C. 2009) (dismissing complaint and holding that 18 U.S.C. § 241 does not give rise to a civil cause of action), *aff'd*, 2010 WL 2574084 (D.C. Cir. 2010), *cert. denied*, 131 S.Ct. 1055 (U.S. Jan. 24, 2011); *Shahin v. Darling*, 606 F.Supp.2d 525, 538 (D. Del. 2009) (dismissing complaint and holding that 18 U.S.C. §§ 241-242 do not give rise to a

---

[7]As the United States points out, Plaintiffs' Amended Complaint lacks a clear statement of what claims are asserted against the United States. (Clerk's Dkt. #38 at 5).

civil cause of action), *aff'd*, 350 F.App'x 605, 607 (3rd Cir. 2009), *cert. dismissed*, 131 S.Ct. 381 (U.S. Oct. 4, 2010); *accord Gipson v. Callahan*, 18 F.Supp.2d 662, 668 (W.D. Tex. 1997).  While the FTCA waives sovereign immunity for certain common-law torts specified in the FTCA, Plaintiffs do not bring claims based on those torts.  And to the extent that Plaintiffs make claims for constitutional torts, the United States has not waived its sovereign immunity. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994).  Indeed, Plaintiffs agree that "the FTCA doesn't extend waiver to 'constitutional' torts." (Clerk's Dkt. #36 at 7).  Because the claims Plaintiffs state against the United States are not within the category of claims for which sovereign immunity has been waived by the FTCA, Plaintiffs' FTCA claims should be dismissed without prejudice for lack of subject-matter jurisdiction.

### 2.     Insufficient Service of Process

The United States argues that, even if the Court did have subject-matter jurisdiction over Plaintiffs' FTCA claims, the Court should dismiss them for insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5). (Clerk's Dkt. #36 at 8 and #38 at 4).  Specifically, the United States alleges that Deborah Stevens attempted to personally effect service on the United States by mail, violating Rule 4(c)(2)'s requirement that someone other than a party effect service. FED. R. CIV. P. 4(c)(2).  Plaintiffs respond that they hired the United States Postal Service to provide service, and thus service was not effected by a party. (Clerk's Dkt. #43 at 2, #41 at 6).  Plaintiffs' argument is erroneous. *See Constien v. United States*, 628 F.3d 1207, 1213 (10th Cir. 2010) (upholding dismissal because "[e]ven when service is effected by use of the mail, only a nonparty can place the summons and complaint in the mail."); *Reading v. United States,* 506 F.Supp.2d 13, 19 (D.D.C. 2007) (upholding dismissal where the Court found "no authority . . . for the proposition

that Congress ever contemplated carving a loophole into the procedural rules to permit a plaintiff to serve a defendant by indirectly effectuating service through the postal service").

In response, Plaintiffs do not offer to effect proper service but instead criticize the case law, asserting that a lesson in "[agency] even needs to be taught to the appellate courts," referring to the *Constien* case.  (Clerk's Dkt. #41 at 6 and #43 at 2). Accordingly, Plaintiffs' FTCA claims against the United States should be dismissed without prejudice for insufficient service of process.

### 3.    Geoffrion's Failure to Present a Claim

The United States further argues that, even if the Court did have subject-matter jurisdiction over Plaintiffs' FTCA claims and Plaintiffs had sufficiently served process, Geoffrion's FTCA claim is permanently barred because he failed to timely submit an administrative claim to the USFS.[8]

The FTCA requires the presentment of a claim before an action can be filed. *See* 28 U.S.C. § 2675(a) (claimant must first present claim to appropriate agency and be denied before an action may be instituted). "Noncompliance with section 2675 deprives a claimant of federal court jurisdiction over his or her claim."  *Adams v. United States*, 615 F.2d 284, 290 (5th Cir. 1980). Furthermore, the claim must be presented within two years after the claim accrues.  *See* 28 U.S.C. § 2401(b) ("tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues").  Geoffrion's claim accrued on the date of the traffic stop, June 30, 2009.  *See In re FEMA Trailer Formaldehyde Prods. Liability Litig.*, 646 F.3d 185, 189 (5th Cir. 2011) ("tort action under the FTCA accrues when

---

[8]The United States does not move to dismiss the Stevens' claim on this basis as Deborah Stevens did timely submit an administrative claim to the USFS.

the plaintiff knows or has reason to know of the alleged injury that is the basis of the action"). Thus, Geoffrion was required to present his administrative claim to the USFS on or before June 30, 2011.

Geoffrion mailed his administrative claim on June 30, 2011. (Clerk's Dkt. #36, Ex. 2, Attach. E at 1, 7). Geoffrion's administrative claim was received by the USFS on July 5, 2011. (Clerk's Dkt. #36, Ex. 2 ¶ 8, Attach. E). The date of receipt—not the date of mailing—is the date of presentment. *See Drazan v. United States*, 762 F.2d 56, 58 (7th Cir. 1985) ("mailing is not presenting; there must be receipt"). Therefore, Geoffrion's administrative claim is untimely, and "forever barred," and dismissal is appropriate. *Cook v. United States*, 978 F.2d 164, 166 (5th Cir. 1992) ("Furnishing notice of claim to appropriate federal agency is jurisdictional prerequisite to filing suit under FTCA."); *McAfee v. 5th Circuit Judges*, 884 F.2d 221, 222 (5th Cir. 1989) (explaining that "[e]xhaustion of administrative remedies is jurisdictional prerequisite to suit and holding that a failure to comply with Section 2675 renders the district court without jurisdiction). Accordingly, if the Court did have subject-matter jurisdiction over this claim, Geoffrion's FTCA claim against the United States regarding the traffic stop incident should be dismissed with prejudice. However, since the Court lacks subject-matter jurisdiction, both Geoffrion and the Stevens' FTCA claims against the United States regarding the traffic stop incident should be dismissed without prejudice.

**B.      Sections 1983 and 1985 Claims Against the New Mexico Defendants**

Plaintiffs bring §§ 1983 and 1985 claims against the State of New Mexico and Governor Richardson in his individual capacity (collectively "New Mexico Defendants") for "failure to train" the Forest Service officers who detained them.[9] (Clerk's Dkt. #5 at 99). The New Mexico

---

[9]Plaintiffs state they are pursuing claims against Governor Richardson solely in his individual capacity and not his official capacity. (Clerk's Dkt. #33 at 3).

14

Defendants move to dismiss all claims asserted by Plaintiffs against them. (Clerk's Dkt. #14 at 1). Specifically, the New Mexico Defendants move to dismiss Plaintiffs' action against them because (1) the Eleventh Amendment immunizes the State of New Mexico from suit; (2) the Court lacks personal jurisdiction over Governor Richardson; (3) Plaintiffs have filed this action in an improper venue; (4) Governor Richardson enjoys qualified immunity; and (5) Plaintiffs fail to state a claim against the New Mexico Defendants.

### 1.    Lack of Subject-Matter Jurisdiction

The New Mexico Defendants argue that the Eleventh Amendment immunizes the State of New Mexico from suit. (Clerk's Dkt. #14 at 2).  Under the Eleventh Amendment to the United State Constitution, an unconsenting state is immune from suits brought in federal courts by her own citizens as well as by citizens of another state.  *Edelman v. Jordan*, 415 U.S. 659, 663, 94 S.Ct. 1347, 1355 (1974).  The New Mexico Defendants point out that "Section 1983 'does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties.  The Eleventh Amendment bars such suits unless the State has waived its immunity.'" (*Id.*) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)).

In response, Plaintiffs argue there is "no commercial 'immunity' of any type, kind, or nature where there are crimes committed," nor is there immunity "for criminal conduct" or "criminal violations of rights." (Clerk's Dkt. #33 at 2).  Plaintiffs further argue that immunity is waived where the claim is "deliberate indifference." (*Id.* at 3).  Regarding Plaintiffs' criminal conduct arguments, the State of New Mexico responds that these arguments are inapplicable in the present action as it is a civil suit, and all claims against the State of New Mexico are based in tort and/or civil rights violations for which no immunity has been waived.  (Clerk's Dkt. #39 at 1, n. 2).  The State of New

15

Mexico specifically points out that "failure to train" is not considered criminal conduct in any case, statute or other law. (*Id.*). The New Mexico Defendants are correct.

Regarding Plaintiffs' deliberate indifference argument, Plaintiffs argue that "immunity" is waived where there exists a claim of deliberate indifference, citing *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1239 (10th Cir. 1999). (Clerk's Dkt. #33 at 3). *Sutton* is not on point, however. In *Sutton* the court found that the state waived its immunity by removing the case to federal court, thereby consenting to federal jurisdiction—no mention is made of any waiver as a result of a claim of deliberate indifference. *Sutton*, 173 F.3d at 1234. Thus, Plaintiffs' deliberate indifference argument fails to demonstrate the State of New Mexico waived its immunity. As Plaintiffs have failed to demonstrate that the State of New Mexico waived its sovereign immunity, Plaintiffs' §§ 1983 and 1985 claims against the State of New Mexico should be dismissed without prejudice.[10]

### 2.    Personal Jurisdiction Over Governor Richardson

Governor Richardson moves to dismiss for lack of personal jurisdiction, contending that he has not availed himself of this Court's jurisdiction. (Clerk's Dkt. #14 at 9). Plaintiffs respond that Governor Richardson should expect to be hailed into court in any state because he failed to train

---

[10]Although the New Mexico Defendants state they move to dismiss with prejudice, a dismissal based on Eleventh Amendment immunity takes place before weighing the merits, and thus cannot result in dismissal with prejudice. *See Ramming*, 281 F.3d at 161 ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits"); *Warnock v. Pecos Cnty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996) ("Because [Eleventh Amendment] sovereign immunity deprives a court of jurisdiction, the claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice").

USFS officers regarding the enforcement of state laws in a national forest area visited by people from all over the world. (Clerk's Dkt. #33 at 10). Aside from the allegation Governor Richardson has contacts with Texas because he failed to train the USFS Agents, Plaintiffs admit that they "know of no *other* contacts [Governor Richardson] has with [Texas] relevant to this matter." (Clerk's Dkt. 33 at 10). This is patently insufficient to demonstrate the existence of general jurisdiction over the governor, and thus the Court lacks general jurisdiction over the claims against Governor Richardson.

Concerning specific jurisdiction, "due process requires (1) minimum contacts by the defendant purposefully directed at the forum state, (2) a nexus between the defendant's contacts and the plaintiff's claims, and (3) that the exercise of jurisdiction over the defendant be fair and reasonable." *ITL Intern., Inc. v. Constenla, S.A.*, 669 F.3d 493, 498 (5th Cir. 2012). Plaintiffs claim Governor Richardson has minimum contacts with Texas because he failed to train the USFS Agents regarding New Mexico law in national forest areas, which are visited by people from every state. (Clerk's Dkt. 33 at 10). The mere allegation that Governor Richardson failed to train federal employees is inadequate to demonstrate Governor Richardson purposefully availed himself of the privilege of conducting activities within Texas specific to these claims. Plaintiffs cite no legal support for the proposition that the governor of a state could expect to be sued based on a tourist visit to his or her state. As such, exercise of personal jurisdiction over Governor Richardson would be neither fair nor reasonable. Plaintiffs have thus failed to carry their burden to show the Court may exercise personal jurisdiction over Governor Richardson. Accordingly, Plaintiffs' "failure to train" § 1983 claims against Governor Richardson should be dismissed without prejudice.[11]

---

[11]Although the New Mexico Defendants state they move to dismiss with prejudice, they move to dismiss claims against Governor Richardson on the basis of personal jurisdiction, which cannot result in dismissal with prejudice. *See Guidry*, 188 F.3d at 623 n. 2 (dismissal for lack of personal

**3.      Venue**

The New Mexico Defendants argue that, even if the State of New Mexico had waived its

Eleventh Amendment immunity and the Court had personal jurisdiction over Governor Richardson,

Plaintiffs' "failure to train" § 1983 claims against the New Mexico Defendants should still be

dismissed because the District of New Mexico is the only proper venue for such claims. Under the

pertinent statute:

> [a] civil action wherein jurisdiction is not founded solely on diversity of citizenship
> may . . . be brought only in (1) a judicial district where any defendant resides, if all
> defendants reside in the same State, (2) a judicial district in which a substantial part
> of the events or omissions giving rise to the claim occurred . . . or (3) a judicial
> district in which any defendant may be found, if there is no district in which the
> action may otherwise be brought.

28 U.S.C. §1391(b).  The New Mexico Defendants argue that, since the named defendants do not

all reside in the same State and since the traffic stop alleged by Plaintiffs occurred in the State of

New Mexico, the proper venue for this suit is in the District of New Mexico.  Plaintiffs respond that

venue is suitable everywhere the United States of America may be found. (Clerk's Dkt. #33 at 9).

Plaintiffs cite no legal basis for this claim, and the undersigned is unable to find any such law.  While

the Western District of Texas would be a suitable venue under §1391(b)(3) if there were "no district

in which the action may otherwise be brought. " 28 U.S.C. §1391(b)(3).  However, since venue is

proper in the District of New Mexico under §1391(b)(3)(2) , the terms of §1391(b)(3) do not apply.

Accordingly, as an alternative to the dismissal recommended above, Plaintiffs'  "failure to train"

claims against the New Mexico Defendants under § 1983 should be dismissed without prejudice on

the basis of improper venue.

---

jurisdiction is not judgment on merits and can only result in dismissal without prejudice).

### 4.      Governor Richardson's Qualified Immunity

Regarding Plaintiffs' "failure to train" § 1983 claims against Governor Richardson in his individual capacity, Governor Richardson asserts that, even if the Court had personal jurisdiction over him and even if the venue were appropriate, Plaintiffs' claims against him should be dismissed because qualified immunity protects him from liability. (Clerk's Dkt. #14 at 5). The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). The "driving force" behind creation of the qualified immunity doctrine was a desire to ensure that "'insubstantial claims' against government officials [will] be resolved prior to discovery." *Anderson v. Creighton*, 483 U.S. 635, 640, n.2 (1987). Once raised, a plaintiff has the burden to rebut the qualified immunity defense "by establishing that the official's allegedly wrongful conduct violated clearly established law." *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992).

As to whether Governor Richardson's allegedly wrongful conduct violated clearly established law, Governor Richardson contends no reasonable person would think that a state governor has a duty to train federal officers the state does not hire or employ, and over whom he has no authority or control. (Clerk's Dkt. #14 at 6). He further argues that, even if the officers in question were state employees, a § 1983 "failure to train" case involves claims against the offending officer's supervisor in the department—not a superior far removed from the chain of supervision like the state governor. (*Id.*). Plaintiffs respond that Governor Richardson was the chief law enforcement officer at the time of the alleged traffic stop and the "buck stops there when it comes to seeing to it that *federal* law enforcement officers operating in the STATE are trained on state law." (Clerk's Dkt. #33 at 4).

Plaintiffs further argue that while the "feds have the duty to train due to the employment angle," the "STATE (via RICHARDSON) has the duty to train given the laws being enforced." (Clerk's Dkt. #33 at 4, n.3).

The undersigned notes that the Fifth Circuit places the burden on Plaintiffs to demonstrate that Governor Richardson violated clearly established federal rights. *Salas*, 980 F.2d at 306. As such, Plaintiffs must provide more than a mere conclusory statement that Richardson as a state governor had a duty to train federal law enforcement officers—particularly since the undersigned is unable to find any case law in which a state governor was found responsible for the training of federal law enforcement officers. Given the purpose of qualified immunity is to ensure that "'insubstantial claims' against government officials [will] be resolved prior to discovery," Governor Richardson is entitled to qualified immunity regarding Plaintiffs' claims against him in his individual capacity. *Anderson*, 483 U.S. at 640. Accordingly, Plaintiffs' "failure to train" § 1983 claim against Governor Richardson should be dismissed without prejudice.

### 5.    Failure to State a Claim

If immunity, personal jurisdiction, and venue were not enough to dispose of these claims, the New Mexico Defendants also argue that Plaintiffs' "failure to train" § 1983 claims against them should be dismissed because that cause of action fails to state a claim on which relief may be granted. Specifically, the New Mexico Defendants state that Plaintiffs' claims relate to an alleged unlawful search and seizure by federal agents and not by any employee of the State of New Mexico. (Clerk's Dkt. #14 at 8). The New Mexico Defendants further point out that the only claim against them is that they had a duty to train, but they do not train individuals that they do not employ. Thus, they argue Plaintiffs fail to state a claim against the New Mexico Defendants. Plaintiffs respond that

"deliberate indifference" is a claim, referring to the "failure to train" § 1983 claim. (Clerk's Dkt. #33 at 9).

To succeed on a "failure to train" claim, the plaintiff must show that: (1) the supervisor failed to train the subordinate official; (2) a causal link exists between the failure to train and the violation of the plaintiff's rights; and (3) the failure to train amounts to deliberate indifference. *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 1391 (1997). "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998).

Regarding the first element of the claim, Plaintiffs fail to adequately demonstrate how the USFS Agents were subordinate officials of the New Mexico Defendants, since, by definition, federal officials are not employees of the State of New Mexico. Plaintiffs merely make the conclusory allegation that because the USFS Agents allegedly stopped them for violations of state traffic laws, the New Mexico Defendants have some duty to train the agents. This is not a well-pled factual allegation. The Fifth Circuit has held that "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Beavers v. Metropolitan Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (quoting *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278 (5th Cir. 1993)). Plaintiffs fail to satisfy the first element of the claim because they have not set forth any facts establishing that the New Mexico Defendants had any responsibility for the

21

USFS Agents' training.  For this reason, Plaintiffs' "failure to train" § 1983 claims against the New

Mexico Defendants should be dismissed for failure to state a claim on which relief may be granted.

**C.    *Bivens* Claims Against the Federal Agencies and Officials**

Plaintiffs bring "failure to train" *Bivens* claims against President Obama, Secretary Vilsack,

Chief Tidwell, Chief Kimbell, Smith, Morales,  Hayes, ("Federal Officials"), as well as the USFS

and USDA ("Federal Agencies").  (Clerk's Dkt. #5 at 99-101).  The Federal Defendants move for

the dismissal of all of Plaintiffs' claims against them. because (1) sovereign immunity precludes suit

against the Federal Agencies; (2) the Federal Defendants received insufficient service of process;

(3) President Obama enjoys absolute immunity; and (4) Plaintiffs' fail to state a claim against the

Federal Officials, other than Morales and Hayes.

**1.    Lack of Subject-Matter Jurisdiction Over Federal Agencies**

Plaintiffs bring "failure to train" *Bivens* claims against the USFS and USDA.  (Clerk's Dkt.

#5 at 100).  The USFS and USDA contend that the "United States maintains sovereign immunity

from suits asserting a constitutional violation and a violation of the civil rights statutes."  (Clerk's

Dkt. #37 at 4).  A *Bivens* claim against a federal agency is barred by sovereign immunity.  *See*

*F.D.I.C.*, 510 U.S. at 484 (holding that a *Bivens* action cannot be brought against a federal agency);

*Garcia v. United States*, 666 F.2d 960, 966 (5th Cir. 1982) ("suit for damages against the United

States based on the Constitution is not contemplated by *Bivens* and its progeny"); *Armstead v.*

*Napolitano*, 2012 WL 686286 at *3 (E.D.La. March 02, 2012) ("if plaintiff intends to state a claim

against a federal agency ... under *Bivens*, that claim is barred by sovereign immunity"). Accordingly,

Plaintiffs *Bivens* claims against the USDA and USFS should be dismissed without prejudice.

### 2.     Insufficient Service of Process

The Federal Defendants also move to dismiss for insufficient service on the same basis raised by the United States—namely because Deborah Stevens attempted to personally effect service by mail.  As discussed previously, Plaintiffs failed to comply with the rules concerning service of process, and the Court may dismiss the case without prejudice since Plaintiffs have failed to show good cause for their failure.  Accordingly, Plaintiffs' *Bivens* claim against the Federal Defendants could also be dismissed without prejudice for insufficient service.

### 3.     The President's Absolute Immunity

President Obama argues that, even if Plaintiffs had sufficiently served him with process, the Court should still dismiss Plaintiffs' claims against him because his absolute immunity bars Plaintiffs' claims.  The Fifth Circuit has held that absolute immunity bars suit when the allegations regarding a President's conduct are "within the perimeter of his responsibilities as chief of the executive branch."  *Saunders v. Bush*, 15 F.3d 64, 67 (5th Cir. 1994).  In this case, Plaintiffs seek damages caused by the President's alleged failure ot train USFS Agents.  These allegations relate to his responsibilities as chief executive.  Plaintiffs fail to respond to this argument concerning the President's absolute immunity.  Plaintiffs have thus failed to show their claims are not barred by the President's absolute immunity.  As such, Plaintiffs' *Bivens* claim against President Obama should be dismissed with prejudice on these grounds. *See Hunter v. Rodriguez*, 73 Fed.Appx. 768, 770 (5th Cir. 2003) ("a dismissal based on absolute immunity should generally be with prejudice").

### 4.     Failure to State a Claim Against Federal Officials

Regarding the claims against the Federal Officials in their individual capacities, the Federal Officials argue, except for the claims against Morales and Hayes, the claims should be dismissed for

failure to state a claim.   (Clerk's Dkt. #45 at 3).   *Bivens* cases require specific pleading and may not consist of mere conclusory allegations unsupported by facts.   *See, e.g., Lineberry v. United States*, 436 Fed.Appx. 293, 296 (5th Cir. 2010) (conclusory allegations without specific facts insufficient to maintain *Bivens* claim).   A *Bivens* plaintiff "must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged."   *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999); *see also Iqbal*, 556 U.S. at 663 ("[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

The Federal Defendants state that Plaintiffs only refer to the conduct of Joseph Hayes and perhaps Victor Morales for the traffic stop.   (Clerk's Dkt. #37 at 5).   Defendants argue Plaintiffs fail to allege any personal actions taken by President Obama, Secretary Vilsack, Chief Tidwell, Chief Kimbell, and Smith.   (*Id.*).   Plaintiffs respond that "[e]ach defendant is identified as a responsible party within the relevant chain of command, and, as a consequence, each is responsible for seeing to it that the proper training is provided."   (Clerk's Dkt. #42 at 5).   Stating that a chain of command exists is insufficient to satisfy the specific pleading requirement under *Bivens*.   Plaintiffs are required to demonstrate that the defendants' "acts are causally connected to the constitutional violation alleged."   *Anderson*, 184 F.3d at 443.   Here, Plaintiffs provide no facts concerning what the defendants' actions or lack of actions even were.   Instead, they allege that constitutional violations took place and summarily conclude that various officials failed to train the alleged violators. Plaintiffs' allegations are thus too vague and conclusory to give rise to liability under *Bivens* for "failure to train."   *See Yates v. Unidentified Parties*, 73 Fed.Appx. 19, 20 (5th Cir. 2003) (mere

24

assertion that sheriff's failure to train deputies resulted in assault on plaintiff too vague and conclusory to give rise to liability in § 1983 action alleging assault by sheriff's deputies); *Gros v. City Grand Prairie, Tex.*, 2002 WL 494002 at *9 (5th Cir. March 12, 2002) (mere assertion that police department never taught "civil rights" to its officers conclusory and insufficient to permit reasonable trier of fact to find police chief liable for failure to train). Accordingly, any *Bivens* claims against the Federal Officials, other than Hayes and Morales, in their individual capacities should be dismissed without prejudice.

In summary, Plaintiffs' *Bivens* claims against the Federal Defendants should be dismissed for failure to state a claim, and Plaintiffs' *Bivens* claims against President Obama which should be dismissed with prejudice based on his absolute immunity.

## E.   *Bivens* Claims Against Hayes and Morales in their Individual Capacities

Plaintiffs bring a "failure to train" *Bivens* claim against Hayes and Morales. (Clerk's Dkt. #5 at 23). Hayes and Morales argue that, even if Plaintiffs had sufficiently served them with process, the Court should still dismiss Plaintiffs' action against them in their individual capacities because (1) the Court lacks personal jurisdiction over them and (2) Plaintiffs have filed their action against them in an improper venue. (Clerk's Dkt. #40 at 2 and #44 at 1-2).[12]

### 1.   Lack of Personal Jurisdiction

Even if Plaintiffs had effectively served Hayes and Morales, Plaintiffs' action should still be dismissed because this Court lacks personal jurisdiction over Hayes and Morales. Hayes and Morales move for dismissal for lack of personal jurisdiction pursuant to Rule 12(b)(2), claiming they

---

[12]Hayes and Morales each argue insufficient service of process; however, this has already been discussed above in relation to the Federal Defendants, including Hayes and Morales. As such, the undersigned need not address insufficient service in this section.

have insufficient contacts with the State of Texas to subject them to suit here.  (Clerk's Dkt. #40 at 4).  The same personal jurisdiction analysis conducted above for Governor Richardson applies here as well.  Plaintiffs state that "'[g]eneral' jurisdiction is not relevant, here,'" indicating they do not assert the Court has general jurisdiction over the USFS Agents.  (Clerk's Dkt. #48 at 21).  As such, the Court will only address specific jurisdiction.

To establish specific jurisdiction over Hayes and Morales, Plaintiffs must make prima facie showings that (1) Hayes and Morales have minimum contacts with Texas and (2) Plaintiffs' causes of action arise out of or result from Hayes and Morales' respective contacts.  *Seiferth*, 472 F.3d at 271.  Hayes and Morales contend that they did not purposefully direct activities to Texas and Plaintiffs' claims do not arise from or relate to Hayes and Morales' contacts with Texas.  Plaintiffs respond that Hayes and Morales purposefully directed their activities toward Texas because they were part of a "National Incident Management Team" operating at an international event.  (Clerk's Dkt. #48 at 10-11).  Under Plaintiffs reasoning, Hayes and Morales have sufficient minimum contacts with every forum in the country because they were tasked to enforce traffic laws near the National Forest where the Rainbow Gathering was held.

The specific jurisdiction analysis here is most similar to cases where plaintiffs bring suit in their home states against traffic law enforcement officers of other states.  *See, e.g. Alforque v. Martin Cnty., TX*, 2008 WL 4748127 at *3-4 (S.D.Cal. October 23, 2008) (stop, search, and arrest of Plaintiff within Texas where officer knew Plaintiff was a resident of California does not give rise to personal jurisdiction over Texas officer as Plaintiff failed to assert officer's actions were intended to have effect anywhere other than Texas); *Castapheny v. W. Va. State Police*, 2010 WL 1901817 at *5 (W.D.Pa. April 15, 2010) (alleged illegal traffic stops, illegal searches and seizures, and

warrantless arrest in West Virginia of Pennsylvania resident by West Virginia State Police insufficient to establish personal jurisdiction over West Virginia officers in Pennsylvania); *Aronhalt v. Jones*, 1989 WL 87970 at *4 (D.Or. July 21, 1989) (claims against State of Washington officials regarding traffic stop and arrest of Oregon resident insufficient to establish personal jurisdiction over Washington officials in Oregon).   The fact that the alleged traffic incident occurred on a National Forest Service roadway or that the traffic officers were employed by the USFS does not alter the fact that neither Hayes nor Morales purposely directed their activities toward Texas or purposely availed themselves of the privilege of conducting activities in Texas.   Even presuming that Plaintiffs are correct that the Rainbow Gathering attracts participants from throughout the country, this does not imply that Hayes and Morales, simply by being employed by the USFS at a National Forest, sought out some interaction with the state of Texas.   Indeed, if anything, it was the Plaintiffs who, by traveling to New Mexico to attend the gathering, purposefully directed their activities toward the State of New Mexico.   If they wish to pursue a claim against someone they encountered there, the proper place for that suit is in New Mexico.   Because Plaintiffs fail to establish specific jurisdiction over Hayes and Morales, the Court lacks personal jurisdiction over Hayes and Morales. Accordingly, Plaintiffs' *Bivens* claims against Hayes and Morales should be dismissed for lack of personal jurisdiction.

### 2.      Improper Venue

Even if Plaintiffs had effectively served Hayes and Morales with notice *and* even if the Court had personal jurisdiction over Hayes and Morales, dismissal would still be appropriate because the Western District of Texas is an inappropriate venue for the claims against Hayes and Morales. Plaintiffs make the same meritless argument for venue here that they raised with regard to venue of

the claims against the New Mexico Defendants.  For the reasons stated in that discussion, venue for

a suit against Morales and Hayes in this Court is lacking.

Plaintiffs also rely on 28 U.S.C. § 1402(b) (governing claims against the United States)

stating they may choose whether to bring their FTCA claim in Texas or New Mexico. (Clerk's Dkt.

#48 at 21 and #49 at 7).  Section 1402 governs venue for claims brought against the United States.

Plaintiffs bring FTCA claims against the United States of America. (Clerk's Dkt. #5 at 27).  At no

point in the FTCA section of the Amended Complaint do Plaintiffs state Hayes and Morales are

liable under the FTCA.  Indeed, this is not even possible because, as Hayes points out, FTCA claims

are only properly brought against the United States.  (Clerk's Dkt. #44 at 7 n. 4) (citing 28 U.S.C.

§ 2679). This argument also fails.  Accordingly, Plaintiffs' *Bivens* claims against Hayes and Morales

should be dismissed without prejudice for improper venue.

## IV.  RECOMMENDATION

The undersigned **RECOMMENDS** that the District Court **GRANT** the Motion to Dismiss

by State of New Mexico and William Richardson (Clerk's Dkt. #14); **GRANT** the Corrected Motion

to Dismiss Plaintiff Geoffrion's Action Against the United States by the United States of America,

filed December 19, 2011 (Clerk's Dkt. #36); **GRANT** Federal Defendants' Motion to Dismiss

Actions Against USDA, USFS, and Federal Officials in their Official Capacity, filed December 19,

2011 (Clerk's Dkt. #37); **GRANT** the Motion to Dismiss Plaintiffs Jerry and Deborah Stevens'

Action Against the United States of America, filed December 19, 2011 (Clerk's Dkt. #38); **GRANT**

Defendant Morales' Motion to Dismiss, filed January 3, 2012 (Clerk's Dkt. #40); and **GRANT**

Defendant Hayes' Motion to Dismiss, filed January 6, 2012 (Clerk's Dkt. #44), all as set forth in

more detail above.

## V.  OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 2nd day of July, 2012.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE